AO 91 (Rev. 01/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Western District of New York

| | |
|---|---|
| United States of America<br>v.<br><br>JOSEPH EDWIN CLARK<br><br>*Defendant* | )<br>)<br>)  Case No. 09-MJ- 4154<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of  09/16/2009  in the county of  Monroe  in the  Western  District of  New York , the defendant violated  18  U. S. C. §  2422 (b) , an offense described as follows:

The defendant knowingly used a cell phone, a facility or means of interstate commerce, in an attempt to persuade, induce, or entice C.P., an individual he knew to be under the age of eighteen, to engage in sexual activity, that if it had occurred, is a criminal offense under the law of New York, in violation of Title 18 U.S.C. Section 2422 (b).

This criminal complaint is based on these facts:

Please see attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

KENNETH A. JENSEN, JR., SA FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 12/8/09

_____
*Judge's signature*

City and state:  Rochester, New York         Hon. Marian W. Payson, U.S. Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

**AFFIDAVIT**

STATE OF NEW YORK      )
COUNTY OF MONROE    ) ss:
CITY OF ROCHESTER     )

Kenneth A. Jensen Jr., Special Agent (SA) of the Federal Bureau of Investigation (FBI), United States Department of Justice, Buffalo, New York, having been duly sworn, states as follows:

## I. INTRODUCTION

1. As a Special Agent of the FBI, I am an investigative or law enforcement officer of the United States, empowered to perform investigations and arrests related to violations of federal law, including violations of 18 U.S.C. § 2422(b), namely Coercion and enticement of a minor to engage in illicit sexual conduct. I have been employed as a Special Agent with the FBI since March of 2002, and am currently assigned to the Elmira, New York, Resident Agency of the FBI.

2. This affidavit is based on my investigation, and on information provided to me by members of the law enforcement community. Because this affidavit is being submitted for the limited purpose of establishing probable cause to grant the petitioned warrant, I have not included each and every fact known to me concerning the investigation. Instead, I have set forth only the facts which I believe are necessary to establish probable cause to believe that JOSEPH EDWIN CLARK has committed one or more violations of 18 U.S.C. § 2422 (b), namely Coercion and enticement of a minor to engage in illicit sexual conduct.

## II. INVESTIGATION

3. On September 16, 2009, the parents of an eleven year old female child notified the New York State Police (NYSP) that their daughter (hereinafter referred to by the child's initials, C.P.) had been engaging in a significant number of cellular telephone SMS text messaging conversations with a forty three year old adult male. The parents had also discovered that the adult male had been picking up C.P. from their home without parental permission, and transporting her back to

his residence. The parents identified the forty three year old male as JOSEPH EDWIN CLARK.

4. Acting on the information provided by the victim's parents, C.P. was interviewed later that same day. C.P. disclosed that she had met CLARK through a school based friendship with one of CLARK's young sons, during June 2009. C.P. related that she and a friend talked to CLARK's young son from 10:30 p.m. to 4:30 a.m. one evening. During that conversation, CLARK asked his son "when the girls were coming over". C.P. told the NYSP that the first time she was invited to the CLARK's home, the invitation came from CLARK and was received on her cellular telephone.

5. On or about August 27, 2009, C.P. made her first visit to the CLARK's home, accompanied by a friend. C.P. and her friend were picked up by CLARK and his son and stayed at CLARK's home from 8:00 p.m. to 2:00 a.m. C.P. estimated that, from that date, until September 12, 2009, she received between 1,000 and 2,000 SMS text messages from CLARK. C.P. recalled that amongst the messages was one that asked if she ever got horny, and one which asked if C.P. would like to hang out with CLARK alone. C.P. stated that CLARK would call her during the late night hours, just to talk.

6. C.P. further related that CLARK had picked her up from areas near her home on other occasions. C.P. told the NYSP that CLARK was aware that she did not have her parents permission to go with him on these occasions. CLARK went so far as to direct C.P. that he would not pick her up in front of her house.

7. C.P. elaborated on one such occasion, which occurred on September 15, 2009. On that date, C.P. and her mother met CLARK at a school function. During that meeting, CLARK repeatedly asked the victim's mother for permission for C.P. to come to his home and C.P.'s mother denied this request. Clark persisted through statements that indicated it was a school night and that C.P. had homework to attend to. After the meeting, C.P. returned home with her mother and then received a SMS text message from CLARK requesting that she sneak out of her home to meet him. C.P. agreed, and met CLARK a distance from her home at approximately 11:45 p.m. that night.

8. When CLARK picked C.P. up, he was alone in the car. During the ride to his home, CLARK put his hand on C.P.'s thigh, and rubbed her in that area. Later that evening, CLARK hugged C.P. twice in a manner that made her very uncomfortable.

9. Based on the background provided by C.P. and her parents, and with the parents signed permission, the NYSP assisted C.P. in engaging in a text message conversation with CLARK beginning on September 16, 2009. What appears below is that text messaging conversation. The messages fairly represent the recollections of the investigators involved, and come directly from information provided by Verizon Wireless in response to a search warrant issued by Chemung County Judge Hon. Peter C. Buckley on September 18, 2009.

| Time and Date | Sending phone | Message[1] |
|---|---|---|
| 09/16/09, 23:56 | C.P. | Heyyyr |
| 09/16/09, 23:56 | CLARK | there u r |
| 09/16/09, 23:57 | C.P. | Whats going on |
| 09/16/09, 23:58 | CLARK | a lot where do i start |
| 09/16/09, 23:59 | C.P. | idkt (I don't know, try)[2] |
| 09/17/09, 00:00 | CLARK | well we all thought u (you) got ur (your) phone taken away so kalie said don't text cause ur dad might have ur phone |
| 09/17/09, 00:01 | C.P. | nope i still have my phone ovisily (obviously) lol (laugh out loud) im reallyyy boredd! |
| 09/17/09, 00:03 | CLARK | then i let kalie scream as loud as she possibly can twice ..after 1000 and after 1100 when her grandma and pa picked her up a cop followed us we were bringing kyle home ..he stopped us and told us they got a call about kids being too noisy! |
| 09/17/09, 00:05 | C.P. | Welll kalies screamm is veryyy loud lol... |
| 09/17/09, 00:07 | CLARK | some fucking neighboor. wish I knew which one ..id (I'd) burn there (their) house down..jk (just kidding) |

---

[1] Message signatures have been truncated in that they do not add materially to the conversation.

[2] Parentheticals contain my interpretations of the text messaging shorthand used in the message.

| | | |
|---|---|---|
| 09/17/09, 00:08 | C.P. | Lol wow so is like everyone still awakee |
| 09/17/09, 00:08 | CLARK | yes but they r (are) tired |
| 09/17/09, 00:08 | CLARK | im not |
| 09/17/09, 00:09 | CLARK | kalie wants me to get her |
| 09/17/09, 00:10 | C.P. | if i could like sneak out could u pick me up again becuase it was really fun lastd |
| 09/17/09, 00:11 | C.P. | Jw y (Just wondering, why) did u ask me if i was horney it was like a little out of the ordanarie6 (ordinary) |
| 09/17/09, 00:11 | CLARK | u still remember that |
| 09/17/09, 00:12 | C.P. | Yeah :) but like jw |
| 09/17/09, 00:13 | C.P. | Like just wondering y did u ask me |
| 09/17/09, 00:13 | CLARK | whats jy |
| 09/17/09, 00:13 | CLARK | whats jw |
| 09/17/09, 00:14 | CLARK | do u like it that i asked u or not |
| 09/17/09, 00:16 | C.P. | Idk just wondering |
| 09/17/09, 00:18 | C.P. | Like have u ever asked kalie if she was horney at any time or did u only ask mem (me) |
| 09/17/09, 00:19 | CLARK | well u seemed like open to talking about everything so i was bored and just asking if u ever do .sorry if i struck a nerve i m (I am) really sorry. |
| 09/17/09, 00:24 | C.P. | Its k yeahhhh i am horny! |
| 09/17/09, 00:25 | CLARK | right now |
| 09/17/09, 00:26 | C.P. | Yeahhhh  ua |
| 09/17/09, 00:26 | CLARK | yehhh ...wanna play |
| 09/17/09, 00:28 | C.P. | Play what6 |
| 09/17/09, 00:29 | CLARK | massage ...easy stuff |
| 09/17/09, 00:29 | CLARK | like soft skin |

| | | |
|---|---|---|
| 09/17/09, 00:31 | C.P. | How far r we gonna go im completely game just don't want to get pregnant! |
| 09/17/09, 00:31 | CLARK | ok not that far |
| 09/17/09, 00:33 | C.P. | So is kay going to b (be) with us |
| 09/17/09, 00:33 | C.P. | Or just us! |
| 09/17/09, 00:33 | CLARK | have not heard back from her |
| 09/17/09, 00:34 | CLARK | just us |
| 09/17/09, 00:34 | CLARK | when did u have ur last p. (period) |
| 09/17/09, 00:36 | C.P. | Done 2 days ago thanx gosh  do u have condumdums |
| 09/17/09, 00:37 | CLARK | no but can get them ...or 2 days should be safe right |
| 09/17/09, 00:38 | CLARK | r u virgin |
| 09/17/09, 00:39 | C.P. | ull (You'll) find out and where r u going to get them at this time at night |
| 09/17/09, 00:39 | CLARK | walmart |
| 09/17/09, 00:40 | C.P. | So r u going there right now |
| 09/17/09, 00:40 | CLARK | do u like to be eaten |
| 09/17/09, 00:41 | C.P. | Where can we go and get them before u pick me ups |
| 09/17/09, 00:41 | CLARK | or do u want skin on skin |
| 09/17/09, 00:42 | C.P. | I want to b safea (be safe) |
| 09/17/09, 00:42 | CLARK | i know ur right |
| 09/17/09, 00:43 | C.P. | So where r we going to go to do it |

| 09/17/09, 00:44 | C.P.  | How long til u pick me up |
| 09/17/09, 00:44 | CLARK | my bed |
| 09/17/09, 00:45 | C.P.  | Or r u on ur way to wal-mart right now |
| 09/17/09, 00:46 | CLARK | if u go by the calendar 7 to 17 after the p is danger zone |
| 09/17/09, 00:47 | C.P.  | So what time u goin to pick me up |
| 09/17/09, 00:48 | CLARK | now or u want me to go to walmart |
| 09/17/09, 00:49 | C.P.  | So (Go) to wal-mart first i want to make sure everyone is sleeping so it is easy to sneak out |
| 09/17/09, 00:49 | C.P.  | So r u leaving noww |
| 09/17/09, 00:50 | CLARK | soon let me freshen up 1st |
| 09/17/09, 00:51 | C.P.  | So it has to be fast cause i have school tomorrows |
| 09/17/09, 00:51 | CLARK | ok |
| 09/17/09, 00:52 | C.P.  | So like u leaving in 15 minutes |
| 09/17/09, 00:53 | C.P.  | So like 10 and ill b ready |
| 09/17/09, 00:53 | CLARK | less |
| 09/17/09, 00:53 | CLARK | call me |

10. During the above referenced text messaging conversation, CLARK references interaction with law enforcement. Clark is referring to an interaction that he actually had with a New York State Trooper that night related to the investigation detailed herein. Investigators thought it was warranted (for the safety of any children currently at CLARK's home) to have an unmarked car in the area of CLARK's home, in case immediate action was deemed necessary. The assigned New York State Trooper, contacted and identified CLARK on a ruse, stating that there were reports of excessive noise in the area. The statements in the text messages mirror this. The same trooper would later participate in following CLARK to the Walmart store and arresting him, further bolstering the identification of CLARK as the individual responsible for the text messaging conversation and therefore the violations of federal law alleged herein.

11. Contemporaneous with the conclusion of the text messaging conversation, the trooper, and Inv. Mark Procopio, followed CLARK to the Walmart store closest to CLARK's home, in Horseheads, New York. After arriving at the Walmart, Inv. Procopio followed CLARK on foot through the store and observed CLARK find and purchase a box of condoms. Clark paid for the condoms with cash. After the purchase, and upon exiting the Walmart store, CLARK was arrested by the New York State Police.

12. Subsequent to his arrest, CLARK was transported to the Horseheads, New York, NYSP station. There CLARK was advised of his Miranda rights and waived same in writing. Thereafter, CLARK provided a signed and sworn statement regarding the events he had been involved in that evening. CLARK admitted to knowing C.P., and having met C.P. through a friendship with his young son. CLARK stated that he had picked up C.P. without her parents permission. Clark admitted to rubbing C.P.'s shoulders and placing his hand on her upper leg and rubbing it. CLARK stated that touching C.P. provided him with sexual satisfaction because he thought it would provide her with satisfaction. CLARK also stated that he did fantasize about the young girls, but only when he was texting with them, or when he was around them.

13. As the post Miranda interview continued, CLARK was asked about the text messaging conversation included above. CLARK provided investigators with his summary of the conversation and insights into his intended actions. CLARK's response from the written statement follows:

> "She told me she was bored, and basically it turned into me picking her up to bring her to my house. She said she was good for anything and just didn't want to get pregnant. It came to where I was going to go to Wal-mart to get condoms. I asked her if she wanted me to go to Wal-Mart first or pick her up first. She told me to go to Wal-Mart first and then she would be ready. The whole sex issue came up when she asked what I meant the other day when I asked if she ever got horny. She said she was just wondering. She texted me that she was horny now. That was a trigger for me and I began to push the sex issue with her because she seemed to want it. It seemed like it would not be against her will now so I pursued it."

14. CLARK also confirmed his participation in the conversation about condoms and intending to purchase them. When asked what his intentions for the condoms were, CLARK responded:

"I was going to show up with them and take her to my house. I was going to massage her and see where that led to. I was thinking that we might have oral sex instead of intercourse. But I still brought the condoms in case."

15. CLARK continued to justify the purchase of the condoms by stating:

"I also thought the condoms would make her feel grown up."

16. In both the instant message conversation between C.P. and CLARK, and his post Miranda signed statement; CLARK confirmed his intent to have oral sex with a female child he knew to be eleven years old. This act, if CLARK were allowed to complete it, would result in a violation of New York State Penal Law section 130.45, a class D felony. This violation of New York Penal Law is a requisite component of the violation of 18 U.S.C. § 2422 (b) alleged herein.

17. At the time of his arrest, CLARK had an LG VX 9100 cellular telephone on his person. CLARK identified this phone as the one he used to engage in the text messaging conversation described herein, and provided investigators with a written consent to search. The cellular telephone is now in the custody of the FBI.

## III. CONCLUSION

Wherefore, I respectfully request that this Court grant the annexed criminal complaint charging CLARK with a violation of 18 USC 2422(b) in that, JOSEPH CLARK knowingly used a cell phone, a facility or means of interstate commerce, in an attempt to persuade, induce, or entice C.P., an individual he knew to be under the age of eighteen, to engage in sexual activity, that if it had occurred, is a criminal offense under the law of New York.

_____
KENNETH A. JENSEN, JR.
Special Agent
Federal Bureau of Investigation

Sworn to before me this
8 th day of December, 2009.

Marian W Payson
HONORABLE MARIAN W. PAYSON
United States Magistrate Judge